The next case today is number 221204 and number 221205 United States v. Javier Mojica-Ramos. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, I'm Captain Harmon. Once again, I'm here with Javier Mojica-Ramos. We have two minutes. May it please the court. Murder, intentional homicide, drug trafficking, a tidal wave of armed violent crime. And to support this and the thesis by the substitute prosecutor at page 60 of the appendix that the nature of the offense in this case goes beyond the simple possession of a machine gun. According to the government, the danger to the community and the serious nature of the offense should be considered exceptional in this case. What's the government support for this thesis? A digital file dump, over 240 pages long, unnated, not biographical to Mr. Mojica except for some individual pictures of his ID and I think one personal photo in there. This was a substantive request for a significant upward variance. It wasn't justified by any countervailing obligation that the government possessed. And it's a symptom of really a similar type of error as going all the way back to Santabello where you have a new prosecutor come in late in the case. Apparently the left hand is not talking to the right as Santabello explained it. And the new prosecutor was handed by the U.S. Attorney's Office essentially a weapon. A weapon that can be used for an upward variance. We've provided the court and we provided the court below numerous examples of how the government uses this type of argument, this type of material to make a substantive request either explicitly or implicitly for an upwardly varying sentence. The government essentially undermined its promise to recommend an agreement within the 37 to recommend a sentence within the 37 to 46 month range. I just want to ask you a narrow question which is I think one of your arguments is that the government's conduct in advocating for a high-end revocation sentence should also be considered as part of its breach of the plea agreement in the 922-0 charge. Do I have that right? I'm sorry, their conduct in advocating for it? Yeah. Yeah, so I think the main breach was the filing of this memorandum and then attacking the defense memorandum essentially facelessly. His family history, his Catholic faith. Specifically though, so are there cases suggesting that the government's statements at the revocation sentence then could also be imputed as a prosecutorial breach if the revocation sentence wasn't contemplated by the plea agreement? As far as a case that expressly does that and saw this type of conduct where the government essentially no longer had a breach into the revocation hearing, no. What the court has to look to is general contract principles and the government can't undermine the benefit of the bargain in this case. Did you bargain for a benefit on the supervisory lease? It wasn't expressly in the… No. But we did waive, so one of the operative factors in enforcing an agreement is the waiver of a constitutional right. It necessarily required the waiver of the revocation hearing, of the violation portion of that hearing, and a lot of this we address in our reply. The duty of good faith and fair dealings required the government not to undermine the benefit of the bargain in any case. Is this the case where your brief says that you were denied the sentence you were entitled to? If it said exactly that language, then I… I know I've read that this week, and it's unbelievably wrong. It was we're denying the recommendation that you were entitled to your… Well, maybe, maybe not. Counsel, is your breach claim for the revocation sentence, is that subject to plain error? Do you agree with that? I don't, Your Honor. When we file a motion to compel performance, we ask that both these cases be changed to a different judge so that specific performance could be ordered. And that flows, regardless of how the court looks at the breach, the court looks at Kirkuler, the Kirkuler case, I'm not pronouncing that right, but that case says the government is not entitled to breach and cause a plea to be vacated. So it can't be that the only way that we get due process in the revocation is to ask to vacate our plea, because we could have courts generally say that the defendant can request either a vacature of the plea, which is what happened recently in Arceaga, slightly different issue, but it was an issue with the understanding of the plea terms, or specific performance. And you can't order specific performance without including the revocation. And then we incorporated our objections into the revocation portion of the proceedings. And especially when the injury from the breach necessarily caused another injury. So I think in contract law, the duty to mitigate comes into play. And the government had that duty and breached that. What about, here's another question, can you point us to anywhere in the record where it makes clear that the district would actually rely on the images in the sentence? And I understand that might not be necessary for your breach claim, but it seems relevant for the other claims that you're bringing. And I'm just wondering if there's anything in the record where it's clear that you have to rely on these images. Sure. One of the, so in terms of the court, so my first answer is, I can't point to a record, part of the record where the judge says, I saw all these images and I'm giving a higher sentence. I think that it's apparent from the court sentence, from how it trapped the government's arguments, the government's substantive arguments, and I think it's apparent from the state of the law, if the court assumes otherwise, that the issues were called into law, we've cited a story that shows that sentencing memoranda are meant to influence the court's decision. And so this court has this principle that says the court can infer a disreported decision based on what the parties argued. So I think there's abundant material, even the use of the word arsenal, and then looking to the government's memoranda, which it wasn't just photos of cash, they were embedded within the memoranda, which is what the court uses, which was improper, which was in this case exceptional, and exceptional sentences are not documented. Mr. Fullerton, let me ask you briefly, this is a plea agreement that left a fair amount of room for advocacy by both sides, correct? I don't understand the question, I'm sorry. That, let's see, by my count, the defense recommendation was going to be 36 months on possession and 24 months on the supervised release, which totaled 60, right? And the government was going to agree to recommend 77 months total, 47 on possession and 30 on the supervised release, right? So, no, I think that would be incorrect. The agreement is for a guideline recommendation. But the guidelines left that much room, correct, as between the possession offense and the supervised release. The government was free to argue for the high end you agreed to recommend, correct? In theory, correct, as long as we got the benefit of our bargain. So let's talk about what you agreed to. What you agreed to was a guideline recommendation by both sides, but that still left a fair amount of room for disagreement, judgment, and advocacy, correct? It's a very small amount of room, even if the court thinks there's a separate... We're being told in many other cases this week that a 12-month increase over a guideline range is huge, colossal targantia. This is a 17-month range, it's a significant amount of choice, there's a lot of room for advocacy. My problem, and I hope you will address, is how we appraise a workable rule that allows both sides to advocate within the scope of the agreement and that does not silence the government from advocacy that is permitted within the agreement. This court has said before, the government doesn't have a full budget sponsor even when there's an agreement. I heard you say a moment ago in response to one of my colleagues' questions that you thought that the government's criticism of your client's arguments in mitigation in response to the sentencing memorandum was in itself a bunch. And I'm having trouble figuring out how to work a rule here and how we write an opinion. Sure, well, two responses. The workable rule depends on whether an impartial observer would see the government's conduct and believe that the government believes that a sentence in the guideline range or their recommended sentence is appropriate. And that requires a range of context. In this court, leading up to the sentencing hearing, we had a pre-sentence report that suggested reasons for an upward variance. We had the district court holding up Narvaez Soto a very significant upward variance and saying that the government's material, there wasn't an issue with it. So the government goes in there with the context and that's a significant part of what makes the government's recommendation concessive. And regardless of what broader, I think this might be a case that's difficult to make a broader rule because the government is so far outside of what a substantive submission could be, which is why we submitted some cases showing that when the government is looking at a nonviolent offense and characterizes the defendant as a sociopath or a violent person, that that's a substantive support of a higher sentence. The other part about the discrepancy between sentences, the case of Davis shows that there's a spectrum. So in our reply, we look at Ubiles Rosario where there's multiple year discrepancy. The government has bargained to maintain the ability to ask for a much higher sentence and submit additional aggravated material. So Davis points out that—I believe it's Davis who points out that it describes a 60-month difference as a significant discrepancy. So I think—I wasn't here for the other argument. Twelve months in prison I think is a very—it's a different context if someone is describing to your honor, well, this is a significant upward variance. But in terms of the room that the government has to make a good faith recommendation, I think that that should be covered by the requirement that the government has to abide by the most meticulous standards of promise and performance. And once this court assesses the context of the case, if those aren't complied with, then there's been breach. Thank you, counsel. At this time, the counsel of the government, please introduce himself on the record to begin. Good morning, your honors. At USAID, I am Lee Giovanni McGow appearing on behalf of the United States. If it pleases the court, we ask that this honorable court affirm the lower court because the parties entered into an agreement that contemplated very expressly a sentencing range and the government offered reasons to support that range. And so— What was the sentencing range, counsel? It was 37 months on the lower to 46 months on the higher end, your honor, and that's at Appellant's Appendix 39. Okay, so a difference of nine months. A difference of nine months for the sentencing, and then there's also a six-month gap to a low end of 24 months and a high end of 30 months for the revocation proceeding. And so, your honor, given the fact that the plea agreement expressly incorporated a split sentencing recommendation, the government offered reasons in support of a sentence at the higher end, but also to foreclose a possible lower-end sentence as well. Importantly, the plea agreement did not impose a limit on advocacy, which as this court knows and has also explained in other opinions, it's definitely more art than science. And so the government submitted a sentencing memorandum that specifically recommended the upper end of the sentencing guidelines four separate times, Appellant's Appendix 53, 60, 65, and 66, and the content of the sentencing memo not just related to the 3553 factors, but also to comply with the government's statutory obligation under 18 U.S.C. 3661. Counsel, you're absolutely right that the government can, of course, advocate for the sentence that it's requesting, and there was a range here, but I was struck that your words that the government used to the district court requesting the sentence. And so one of the words that your opposing counsel has highlighted is the government's argument that this was an exceptional case, and that the defendant likely participates in other criminal activity involving high-capacity weapons of war. And I'm wondering if you can address, in particular, the use of the word exceptional. Is that really not a term for asking for a sentence above the guideline range or upward, not just for a sentence at the top of the range? I think it can be, Your Honor, but I think it needs to be evaluated in the appropriate context, because in this case, although there was the use of the word exceptional, which of course the government can understand the court's concern, the conduct was exceptional in the sense that it was remarkable, or that it was really bad, without that necessarily translating into a request for a variance. But the thing is, if it is exceptional, then it suggests that the government's, the contract it made in the plea agreement was sort of, you know, didn't have the substance or the force of a real contract, because the government thought the case was really special. To the contrary, Your Honor. I think the factors that the government presented in the sentencing memo were designed to demonstrate why a sentence at the higher end of the guideline range was appropriate, and that was the type of advocacy that was included in the sentencing memorandum. Because those photos were one reason of several other reasons that specifically relate to the defendant that's being sentenced. They relate to the history and characteristics of the defendant, who has a prior criminal history involving firearms and narcotics, and that while he was on supervisory release and possessed two loaded fully automatic machine guns, they also, the sentencing memo, in addition touched upon the offense conduct and the substantial risk to others present because of the defendant's own behavior. For example, not just possessing two loaded machine guns and small quantities of narcotics, but he abandoned those two fully loaded machine guns in a barber shop, in a public space, for anybody to come and grab them. And so, Your Honor, in addition to the defendant's criminal history and the specific offense conduct, the pictures really do indicate, or at least corroborate, a certain pattern in the defendant's criminal history. Even if we put the pictures aside, so let's say they weren't even part of this case, one thing that really struck me was the government statements about, and I don't have them right in front of me, but that this defendant was likely involved with a lot of other very serious criminal activity. And I, in terms of the defendant's breach argument, I think that's a factor you really have to wrestle with. Is there a way that we should think about that? I think so, Your Honor. And I think the point that I was making is right on point with the question that you're asking. The defendant's history, combined with the offense conduct, paint a picture of somebody who deals and engages with firearms, whether possessing, whether using, it's unclear. But the content from the phone, I think, demonstrates that there is a pattern of firearm recidivism present in this particular case. And so the way that I would frame, or try to frame the pictures… That's not what the government said. Well, I think the way I would frame the pictures is, there are too few pictures, and they can be dismissed as a fluke, as an accident, as something that just happened to stumble upon the defendant's phone. By including enough pictures, that argument cannot be made any longer. Because there's just so many. You agree that the specific words that the government chose to use matter, right? We're supposed to consider it in the specific words used, and we evaluate whether we agree that it was breached, correct? For sure. So, just to turn to another issue, some of the images… And I understand your point that the government thought it was important to include enough images, so it doesn't seem like a fluke. But some of the images and the descriptions of what the images depicted did raise reliability concerns for me. For instance, the image, Snapchat photo, the panda image, and then what the government attorney did with that image, creating the arrow and suggesting that was the defendant. At least, from what we can see in the appendix provided to us, it's very blurry. What was the basis for the government saying that that was actually an image of the defendant? My understanding is that this is unanalyzed cell phone data. Well, so, Your Honor, in this case, I know the appellant has raised the issue of reliability. And the government does think that for purposes of the sentence and the government's conduct, that is a red herring. Because even though the photos came from the defendant's phone, the district court didn't actually consider any of the photos in the opposing sentence. There was no reference to them. That's not relevant to the breach claim. Because if the plea agreement was breached by including those photos or including unreliable evidence, they don't need to show the defendant's… So, can you try and just go back to the question, what was the basis for the government's conclusion that that was an image of the defendant? Because the image that I saw, granted it's Xerox, it's completely unclear who the person is. And you're referring to the video specifically, not the photos. It's an image, right. With the superimposed panda. Yes. So, that's an actual video that was provided to defense more than a year before the sentencing hearing. And in the video, the superimposed panda actually is sort of removed from the face of the person holding what appears to be an assault-style rifle. And so, when the defendant is moving the face of the panda, it moves to the side, and you can see the individual's face in the video. Harder to see in a still photo. But in the video, there was enough for the court to consider that video to be a reliable evidence that this person who resembles the defendant was in possession of an assault-style rifle. And I will note, just sort of related to that point and the reliability of the photos that were also provided, in the revocation proceeding, the government informed the court that the metadata for the cell phone content was produced to counsel more than eight months before the sentencing on August 3rd, 2021, and also included the dates for the images in the video for the defense counsel's reference. That's at Appellant's Appendix 462 and 463 lines 21 to 25 and 1 to 5. And also indicated that, for example, the video was taken shortly before the defendant was arrested. And that was communicated to defense and also to the court in the revocation proceeding. I understand that you provided the information, but again, I'm just going back to what is the government's basis. The government wants to provide reliable evidence to the court. My understanding is this is unanalyzed cell phone data, so it's just an attorney looked at it and decided it looked close enough to the defendant. Is that the answer? Well, Your Honor, I think the video needs to be taken in the broader context that we've been talking about, not just the pattern of the conduct, firearm recidivism, the individual deterrence, and all the different factors that go into sentencing a particular defendant. This video was one component, sort of a broader picture that the government was presenting as part of its ability to offer reasons in support of a higher sentencing range. And so the content of the video was— I understand that, counsel. I'm sorry. I'm just asking something much narrower. Was this analyzed in any way, or did just an attorney look at it and conclude that the information was reliable enough based on just the attorney looking at it? If you're referring to analysis, the content from the cell phone that was seized on the defendant's person was extracted by federal agents, and the content was provided to the defense in full for them to be able to look at it, analyze it, have questions, have conversations about it, more than a year before the hearing. And so the photos, the video, everything was provided with metadata to the defense, and there were really no conversations about it. So to the extent that it was extracted using a formal method from the device and then shared with defense counsel more than a year before the sentencing hearing, and then also reviewed by the government to determine that that particular video, when viewed as a video as opposed to a still image, demonstrates somebody resembling the defendant. And I think part of the government's message in the sentencing memorandum is that it appears to be the defendant, because although it appears clear to the government, wanted to be sure that that language is couched in some kind of preparatory language so that it's not communicated that this is 100% the defendant. But given how the video was extracted, given the multiple people that looked at it, and really the fact that the individual really does resemble the defendant, that was conveyed to the court as part of a broader sentencing memo. I have a different question. Your brief points to sources that the government argues support the court's claims about the dangerousness of altered machine guns, or modified machine guns, but there are no sources in the record below. The court did not offer any substantive support for that. How are we to know that the court relied on evidence in terms of the dangerousness of modified machine guns that have a sufficient condition of reliability in a case like this? So if Your Honor is referring to the Kimbrough portion of the analysis, you're right that the court did reference the machine gun's dangerousness and also its difficulty to control. And that information really does come from not just public sources, because there are several cases that have discussed the dangerousness of homemade machine guns, but also common sense, because if someone is taking what's designed to operate in a semi-automatic fashion and then at home modifying it and tweaking it to be able to expel as many bullets as are in the magazine at one time, there's sort of a common sense implication that it may explode in your hand, as I found out recently. And so I think just given the inherent dangerousness associated with building a machine gun in your house, I think a lot of that is either common sense or available in other cases that discuss these types of machines. Okay, not here, but not available here in this record, as far as we can tell. Okay, thank you. If there are no other questions, thank you, Your Honor. Thank you, counsel. At this time, counsel for the appellant would please reintroduce himself on the record. He has a two-minute rebuttal. Good morning, once again. Kevin Lerman on behalf of the RBI, and I'm moving to comments. I would like to make just three points briefly. The first is, as we noted in our reply, the government, in their brief and now in argument, doesn't deny that their advocacy failed the court's impartial observer test. And so I think that that issue is resolved. I would like to point out, I think I made the point in Rosa Juarez, but the plea agreement here was for a recommendation within the guideline range. There wasn't a stipulation on criminal history points, so that range now is reduced to 33 to 41 months after November 1st, which is retroactive and should be retroactive appeal as well. Second point— Your Honor, so you're asking us to apply that now? Yes, Your Honor, and my apologies. I will submit a 28-J to that extent. An amendment is retroactive if it's clarifying and not substantive, and this clarifies when a person's status as being one who provides release, probation, or some quote-unquote criminal justice sentence is an aggravator, and so that should be applied retroactively in this court's overall hearing. The commission declared retroactively. It did, Your Honor, but that declaration applies under 35A2C2, so it is retroactive on Directive 2 as well. Briefly, the modified gun allegation—it's not even consistent with what the court's pronouncement is, where the court quotes United States v. Henry from the 9th Circuit, but it sees nothing more dangerous short of bombs and missiles and that sort of thing. So it's not a fact that—there's two reasons why it's not a basis for a sentence. One, it's not a fact that it's reasonably not contemplated in the guideline, and two, this originates outside the record. Most recently, this court and Navarro's son, Esteban, provided that analysis. I'm out of time for the third point. We ask the court to vacate both sentences and remand with a remedy that's in the interest of justice, which would be ideally one that will resolve this case finally, and that's what we ask the court to do. Thank you, counsel. That concludes the argument in this case.